UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DANNY HEARNS,

                    Petitioner,

      -against-

DALE ARTUS, Superintendent, Clinton
Correctional Facility,

                 Respondent.
-------------------------------------------------------------------X

MARVIN CROSBY,

                    Petitioner,

      -against-

DALE ARTUS, Superintendent, Clinton
Correctional Facility,

                 Respondent.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER
08-CV-192 (NGG)**

**MEMORANDUM & ORDER
08-CV-218 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Danny Hearns and Marvin Crosby (collectively, "Petitioners") bring pro se petitions for

writs of habeas corpus pursuant to 28 U.S.C. § 2254, challenging their 2003 convictions in New

York State Supreme Court, Kings County.  (Hearns Petition, 08-CV-192 (Docket Entry # 1);

Crosby Petition, 08-CV-218 (Docket Entry #1).)  For the reasons set forth below, both petitions

are denied.

# I.    BACKGROUND

In June 2001 Jeremy Deliotte was living and working as a barber in Brooklyn, New York. (Trial Transcript ("Tr."), State Court Record, Ex. 7, 255.)[1] He was thirty-one years old. (Id. at 254-55.) On June 19, 2001, one of Deliotte's acquaintances, Christopher Gregory, arrived at Deliotte's apartment around 10:00 p.m. (Id. at 286-87.) Gregory was accompanied by two men that Deliotte had not previously seen. (Id.) At gunpoint, they forced their way into Deliotte's apartment and tied him up. (Id. at 292-97.) Over the course of the next several hours, they struck Deliotte with a hammer, slashed his throat, stabbed him in the chest, and lit him on fire. (Id. at 336-47.) Deliottte survived, but his arms were so badly burned that they had to be amputated. (Id. at 350.)

On December 18, 2003, a jury convicted Hearns and Crosby of two counts of Burglary in the First Degree, in violation of N.Y. Penal Law § 140.30; one count of Attempted Murder in the Second Degree, in violation of N.Y. Penal Law §§ 110.00 and 125.25; one count of Kidnapping in the First Degree, in violation of N.Y. Penal Law § 135.25; and one count of Criminal Possession of a Weapon in the Fourth Degree, in violation of N.Y. Penal Law § 265.01. (Id. at 1437-42.) Gregory was not charged because he was murdered on June 22, 2001. (See id. at 946-47.)

On January 27, 2004, the trial court sentenced Hearns and Crosby as persistent violent felony offenders under N.Y. Penal Law § 70.08. The court sentenced them both to four indeterminate terms of twenty-five years to life imprisonment on their burglary, attempted murder, and kidnapping convictions and to a definite one-year term on their weapon possession

---

[1] Petitioners were tried in a single proceeding. All references are to the state record submitted by the Kings County District Attorney's Office in response to Crosby's petition, except as otherwise noted.

convictions. (Sentencing Minutes 14-50.) The sentencing court ordered the burglary sentences to run concurrently with each other, but consecutively to the sentences on the attempted murder and kidnapping convictions; the court ordered the latter sentences to run concurrently with each other and with the weapon possession sentences. (Id.) In sum, Hearns and Crosby each received an aggregate sentence of fifty years to life imprisonment. (Id.)

Hearns and Crosby appealed their convictions to the Appellate Division of the New York State Supreme Court. (State Record, Ex. 3; Ex. 4.) They were represented by appointed counsel. Crosby and Hearn also filed their own supplemental pro se briefs. (State Record, Ex. 4; Hearns State Record, Ex. 6.) On October 10, 2006, the Appellate Division affirmed their judgments of conviction and sentences. See People v. Hearns, 33 A.D.3d 722 (2d Dept. 2006); People v. Crosby, 33 A.D.3d 719 (2d Dept. 2006). The Appellate Division rejected some of Petitioners' claims on the merits and concluded that others were procedurally defaulted. On January 25, 2007, the New York Court of Appeals denied Petitioners' applications for further appellate review. See People v. Hearns, 8 N.Y.3d 846 (2007); People v. Crosby, 8 N.Y.3d 846 (2007).

## II.    DISCUSSION

### A.    Standard of Review

Under 28 U.S.C. § 2254(d), a federal court cannot vacate a state conviction unless the challenged state court decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state

decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. For relief to be warranted, the "state court's application of governing federal law . . . must be shown to be not only erroneous, but objectively unreasonable." Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009) (internal quotation marks omitted).

In assessing "clearly established" federal law, a federal district court must confine itself to the holdings, as opposed to the dicta, of the Supreme Court. See Carey v. Musladin, 549 U.S. 70, 74 (2006). Moreover, "Musladin admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions." Rodriquez v. Miller, 499 F.3d 136, 140 (2d Cir. 2007); see also Yarborough v. Alvarado, 541 U.S. 652, 660-61 (2004). ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.")

A state court's finding of procedural default, absent certain exceptions, bars a federal court from granting habeas relief. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). To overcome such a default, a petitioner must demonstrate either (1) cause and actual prejudice, or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. Id. at 750. A state court holding that a claim is both procedurally barred and without merit is sufficient to invoke a state procedural bar. See Harris v. Reed, 489 U.S. 255, 264 n.10; Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 (2d Cir. 2000).

## B.    Brady Material in the Possession of the Federal Government

Petitioners assert that the prosecutor's failure to obtain and disclose any exculpatory

material in the files of the federal government violated their rights under Brady v. Maryland, 373

U.S. 83 (1996).[2]  (Hearns Petition 6; Crosby Petition 20-22, 42-43.)  They argue that the

prosecutor was obligated to obtain such material because Petitioners were subjects of a joint

state-federal investigation.  (See Hearns Petition 6.)  The Appellate Division rejected Hearns's

Brady claim on the merits and found that Crosby's claim was procedurally barred.  See Hearns,

33 A.D.3d at 722; Crosby, 33 A.D.3d at 721.

Petitioners do not dispute that the prosecutor turned over all the exculpatory material in

his office's possession and in the possession of the New York Police Department ("NYPD").

This included an NYPD file related to a separate federal investigation and the federal grand jury

testimony of Antoinette Crum, one of the prosecution's witnesses.  (Tr. 12-13.)  The prosecutor

explained that the federal government had pursued an independent racketeering investigation.

(Id.)  He stated that he was not privy to any of the federal government's internal memoranda.

(Id. at 15.)

At one point the prosecutor indicated to the trial court that there was a "joint investigation

that included this case." (Id. at 25.)  Petitioners argue that, if a joint federal-state investigation

occurred, any material in the possession of the federal government is also subject to Brady.  (See

Hearns Petition 6.)  The evidence at trial, however, did not establish that the federal government

collaborated with the prosecution in developing the case.  To the contrary, all of the testifying

---

[2] Specifically, Petitioners ask the court to "hold this appeal in abeyance" and "remand the case for a fact-finding
hearing" to determine whether the prosecutor failed to disclose Brady and/or Rosario material in the files of the
federal government.  (See Hearns Petition 6.)  No hearing is required, however, for the reasons discussed below.
Additionally, the Rosario rule, see N.Y. Crim. Proc. Law § 240.45(1)(a), only involves state rights, such that a
violation of that rule would not entitle Petitioners to habeas relief.  See Green v. Artuz, 990 F. Supp. 267, 274-75
(S.D.N.Y. 1998).

investigators worked for the NYPD and the prosecutor explained that he had only limited knowledge of the federal investigation. (Tr. 15.) Accordingly, the Appellate Division's determination that Petitioners were not entitled to additional federal material was reasonable. See 28 U.S.C. § 2254(d)(1).

Moreover, Petitioners would not be entitled to habeas relief even if the federal government did play a limited role in developing the prosecution's case. Brady and its progeny establish significantly lesser disclosure obligations. For example, the Court has held that every prosecutor is chargeable with knowledge of exculpatory information known to another prosecutor in the same office. See Giglio v. United States, 405 U.S. 150, 154 (1972). The Court has also held that a state prosecutor is chargeable with knowledge of exculpatory information in the possession of a police department in the same state. See Kyles v. Whitley, 514 U.S. 419, 437-38 (1995); Strickler v. Greene, 527 U.S. 263, 275 n.12 (1999). But the Supreme Court has never held that a prosecutor must obtain and disclose exculpatory information in the possession of another sovereign.

Although Kyles is factually distinguishable, the Court did state that an "individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." 514 U.S. at 437 (emphasis added). This statement may suggest that, if a federal agency acts "on behalf" of a state prosecutor in a particular case, the state's Brady obligation extends to exculpatory material in the possession of the relevant federal agency. But see United States v. Avellino, 126 F.3d 249, 255 (2d Cir. 1998) (cautioning against the adoption of a "monolithic view of government" in the Brady context that would "condemn the prosecution of criminal cases to a state of paralysis"). Under the standards set forth in Musladin, 549 U.S. at 74, and Yarborough, 541 U.S. at 660-61, however, the court

6

cannot extend <u>Kyles</u> in this manner. <u>See generally</u> <u>United States v. Zagari</u>, 111 F.3d 307, 320

n.13 (2d Cir. 1997) ("The extent to which knowledge may be imputed from one federal

investigative agency to another for <u>Brady</u> purposes is as yet unclear.") Accordingly, even if

there was evidence of investigative coordination between the prosecutor and the federal

government, Petitioners would not be entitled to relief.

The Appellate Division's conclusion that Hearns's <u>Brady</u> rights were not violated did not

represent an unreasonable application of clearly established federal law as determined by the

Supreme Court. <u>See</u> 28 U.S.C. § 2254(d)(1). Crosby's claim, although procedurally defaulted,

is similarly meritless.

**C.     Confrontation Clause Based Claims to Crum's Testimony**

Petitioners assert that their right to a fair trial was violated by the introduction of hearsay

testimony provided by Antoinette Crum. (Hearns Petition 8-9, Crosby Petition 20). The

Appellate Division concluded that Hearns's claim was "without merit" and that Crosby's claim

was procedurally barred. <u>Crosby</u>, 33 A.D.3d at 721; <u>Hearns</u>, 33 A.D.3d at 722.

At trial, Crum testified that she had dated a man named Johnnie Butler. (Tr. 128.)

Through Butler, Crum met Hearns and Crosby. (<u>Id.</u>) She recounted a conversation in which the

three men discussed working together on a robbery. (<u>Id.</u> at 137-140.) Crum also testified about

several conversations between Butler and Hearns during which Hearns admitted slashing

Deliotte's throat and setting him on fire and complained that he had not made "a dime" for his

efforts. (<u>Id.</u> at 141-55.)

Introduction of this testimony did not violate Petitioners' constitutional rights. To the

extent that Petitioners object to the introduction of their <u>own</u> statements, the Confrontation

Clause of the Sixth Amendment is not implicated. <u>See</u> <u>Williamson v. United States</u>, 512 U.S.

594, 605 (1994). Additionally, the Confrontation Clause is only triggered by the introduction of "testimonial" hearsay. See Crawford v. Washington, 541 U.S. 36, 51 (2004). Although the Supreme Court has not provided a comprehensive definition of testimonial statements, it has explained that such statements are generally the product of formal or structured interrogations by law enforcement personnel. See United States v. Williams, 506 F.3d 151, 157 (2d Cir. 2007) (discussing Crawford, 541 U.S. at 51-52). The conversations that Crum described bear no similarity to the statements that the Supreme Court has characterized as testimonial. They were not the product of interrogation, they were not made to law enforcement personnel, and they were not made in anticipation of later use in a court proceeding. See generally Williams, 506 F.3d at 157.

Accordingly, the Appellate Division's rejection of Hearns's claim was a reasonable application of clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). Crosby's claim, although procedurally defaulted, is also without merit.

### D. Restriction of Detective Prate's Testimony

Petitioners next claim that the trial court impermissibly restricted the cross-examination of NYPD Detective Michael Prate. (Hearns Petition 9; Crosby Petition 20.) Petitioners assert that the court precluded introduction of evidence that the NYPD did not pursue other potential suspects. (See Hearns Petion 9.) The Appellate Division concluded that Hearns's claim was without merit and that Crosby's claim was procedurally barred. Hearns, 33 A.D.3d at 722; Crosby, 33 A.D.3d at 721.

On direct examination, Detective Prate testified about his investigation into Corey Gregory's death. (Tr. 945-984.) On cross-examination, Hearns's counsel sought to inquire into the investigation of suspects other than Petitioners. (Tr. 990-92.) After an objection, the trial

court warned Hearns's counsel that if he pursued this line of inquiry, the prosecutor would be permitted to elicit additional testimony about the reasons that the investigators ultimately chose to focus on Hearns and Crosby. (Tr. 1002-03, 1008-09.)

Although a defendant's right to cross-examine witnesses "is one of the most firmly established principles under Supreme Court law," Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003), it is not absolute. "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things . . . confusion of the issues . . . or interrogation that is repetitive or only marginally relevant." Del. v. Van Arsdall, 475 U.S. 673, 679 (1986). "The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Id. (internal citation omitted).

Here, the trial court determined that if the defense asked Detective Prate about suspects that the NYPD did not pursue, the prosecutor should be entitled to elicit further testimony regarding the investigation. Petitioners have not shown that this decision fell outside the trial court's "wide latitude" to impose "reasonable limits" on cross-examination. Van Arsdall, 475 U.S. at 679. The Appellate Division's rejection of Hearns's claim was not an unreasonable application of clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). Crosby's habeas claim on this ground is procedurally defaulted, but is also without merit.

### E. Claims Based on the Untimely Disclosure of Payments to Crum

Petitioners also contend that they were deprived of a fair trial by the prosecutor's late disclosure of certain payments received by Crum and by the trial court's ruling regarding the

9

scope of cross-examination related to that information. (Hearns Petition 11; Crosby Petition 20.) The Appellate Division concluded that Petitioners' claims were without merit. Hearns, 33 A.D.3d at 722; Crosby, 33 A.D. 3d 720-21.

Prior to trial, the prosecutor disclosed that the federal government gave Crum approximately $1400 in relocation assistance when she began cooperating with the federal investigation. When Crum testified on December 4, 2003, Petitioners' counsel cross-examined her regarding those payments. (Tr. 172-74, 213-14). On December 15, 2003, the prosecutor stated that he was recalling Crum to the stand to offer additional testimony. (Id. at 805-06). At that time, he also informed the defense that he had recently learned that Crum had received approximately $700 in additional support from the government. (Id. 806-07.)

The prosecutor acknowledged that Petitioners had a right to cross-examine Crum regarding those additional payments. (Id. at 807.) He also argued that if Petitioners chose to do so, he should be permitted to elicit testimony explaining why Crum had received financial help, i.e., because Crosby threatened her. (Tr. 808-13.) The court agreed that if the defense created the impression that Crum's testimony was "bought and paid for," the prosecutor should be permitted "to explain to the jury why in fact the money was paid." (Id. at 813.)

Petitioners were not prejudiced by the delayed disclosure of the additional money received by Crum. They were already aware that Crum had received similar payments. The knowledge that she received an additional $700 would not have meaningfully enhanced their cross-examination. See Shabazz v. Artuz, 336 F.3d 154, 166 (2d Cir. 2003) ("Where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not

material."); Tankleff v. Senkowski, 135 F.3d 235, 251 (2d Cir. 1998) ("When a witness's credibility has already been substantially called into question in the same respects by other evidence, additional impeachment evidence will generally be immaterial and will not provide the basis for a Brady claim."). Even more importantly, Petitioners learned of the additional payments at a time when they could still have further cross-examined Crum if they so chose. Finally, the trial court reasonably determined the permissible scope of cross-examination in determining that, if Petitioners did raise the issue, the prosecution should be permitted to rehabilitate Crum. See Van Arsdall, 475 U.S. at 679.

The Appellate Division's rejection of these claims was not an unreasonable application of clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). Petitioners are not entitled to habeas relief on either their late disclosure-based claims or their claims regarding the court's evidentiary determination.

F.     The Denial of a Request for Adjournment

Petitioners next contend that they were deprived of a fair trial by the trial court's denial of an adjournment to allow them additional time to review Crum's grand jury testimony. (Hearns Petition 13-14; Crosby Petition 20.) The Appellate Division rejected Petitioners' claims on the merits. Hearns, 33 A.D.3d at 722; Crosby, 33 A.D. 3d at 720-21.

The prosecutor initially withheld Crum's grand jury testimony pursuant to a protective order to ensure the safety of Crum and other prosecution witnesses. (Tr. 2-5) He disclosed the testimony on Thursday, December 4, 2003, prior to opening statements. (Id.) Later that day, Crum was scheduled to be the prosecution's first witness. Defense counsel sought to defer cross-examination until the following Monday. (Id. at 101.) The trial court denied this request. (Id.)

"Only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the [Constitution]." See Drake v. Portuondo, 321 F.3d 338, 344 (2d Cir. 2003) (quoting Morris v. Slappy, 461 U.S. 1, 12 (1983)); see also Grotto v. Herbert, 316 F.3d 198, 205-07 (2d Cir. 2003). According to the court, counsel had two and one-half hours to review Crum's grand jury material prior to her testimony. (Tr. 101.) Defense counsel's cross-examination of Crum suggests that they were well-prepared. (See Tr. 164-213.) Finally, even if there was additional material for cross-examination that defense counsel did not immediately identify, they could have addressed it when Crum was later recalled to the stand. Under the circumstances, any error in denying an adjournment was harmless. See Fry v. Pliler, 551 U.S. 112, 121 (2007); Brecht v. Abrahamson, 507 U.S. 619, 638 (1993); see also Hill v. Ozmint, 339 F.3d 187, 196-97 (4th Cir. 2003) (to establish constitutional violation, petitioner must show not only that denial of continuance was an abuse of discretion, but also that the erroneous ruling prejudiced the defense).

The Appellate Division's rejection of these claims was not an unreasonable application of clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). As such, Petitioners are not entitled to habeas relief on this ground.

**G.    Jury Instruction Claim**

Petitioners next claim that, by failing to adequately respond to a question that the jury asked during its deliberations, the trial court deprived Petitioners of their constitutional right to a fair trial. (Crosby Petition 6-11; Hearns Petition 15.) The Appellate Division rejected these claims on the merits. Crosby, 33 A.D. 3d 720; Hearns, 33 A.D.3d at 722. With respect to Crosby's claim, the court explained that the jury instruction "was appropriate and the trial court

meaningfully responded to a jury note with respect thereto by rereading its original instruction."
Crosby, 33 A.D. 3d 720.

During its deliberations, the jury twice sent the court a note seeking guidance on the concept of "acting in concert." The first time, the jury's note stated: "We need a clarification on the law for attempted murder and assault as related to acting in concert." (Tr. 1417.) Without objection from the parties, the court reread its charge on acting-in-concert liability, as well its charges on the attempted murder and assault counts. (Id. at 1418.) The charge explained that "mere presence" at the scene of a crime is insufficient for acting in concert liability. (Id. at 1419.) It further stated that acting in concert liability requires a finding that a defendant "solicited, requested, commanded, importuned or intentionally aided [another] person to engage in [the relevant] conduct." (Id.)

The jury's second note asked: "With respect to acting in concert, does intent to aid require an act of commission or is an act of omission sufficient?" (Id. at 1426.) The judge expressed his intention to reread the portion of the charge concerning acting in concert liability. (Id.) Crosby's attorney objected to this proposal and argued that, because the jury had already heard that portion of the charge twice, hearing it a third time would not resolve any confusion. He suggested informing the jury that "an act of omission, standing alone, cannot be acting in concert." (Id. at 1433.) The court declined to instruct the jury in this manner, choosing instead to repeat the initial instruction. (Id.)

A defendant who asserts that his constitutional rights were violated by a trial court's failure to deliver a particular instruction has an "especially heavy" burden because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." See Henderson v. Kibbe, 431 U.S. 145, 155 (1977). Where an error in a jury instruction is

alleged in a habeas case, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973); see also Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001). The relevant question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp 414 U.S. at 147; see also Davis, 270 F.3d at 123.

Under New York law, no physical act is required for acting in concert liability. See N.Y. Penal Law § 20.00. The jury instruction proposed by Crosby's counsel had the potential to create unnecessary confusion on this issue. The court's original charge was a more comprehensive and clear statement of the law. In particular, it contained an explanation that, while "mere presence" is insufficient, verbal encouragement can be sufficient for acting in concert liability. The trial judge's decision to reread the original charge was reasonable and did not violate Petitioners' constitutional due process rights.

The Appellate Division's determination that Petitioners' claim was without merit did not constitute an unreasonable application of clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). Petitioners are not entitled to habeas relief on this ground.

### H.    Stricken Testimony that Crosby Had Been a Drug Dealer

Petitioners claim that Crum's testimony that Crosby had been involved in drug sales invited the jury to improperly convict them based on a propensity for criminal conduct and thereby violated their right to a fair trial. (Crosby Petition 2; Hearns Petition 12-13.) The Appellate Division rejected Crosby's claim on the merits, concluding that the "trial court's immediate curative instruction . . . effectively minimized any potential prejudice." Crosby, 33

A.D. 3d 720. It also found that Hearns's claim was "without merit." See Hearns, 33 A.D.3d at 722.

Crum testified on direct examination that she met Crosby in 1998 through her boyfriend, Johnie Butler. (Tr. 130.) The prosecutor asked Crum "under what circumstances" she saw Crosby. (Id. at 131.) Crum initially stated that she saw Crosby when Butler was "[g]oing to take him drugs, to pick up drug money." (Id. at 131.) Crosby's lawyer objected; the trial court sustained his objection and instructed the jury to disregard Crum's answer. (Id. at 131-32.)

A jury is presumed to follow instructions to disregard inadmissible evidence unless there is an "overwhelming probability" that it will be unable to do so and a strong likelihood that the effect of the evidence will be "devastating" to the defendant. See Greer v. Miller, 483 U.S. 756, 766 n.8 (1987); see also United States v. Elfgeeh, 515 F.3d 100, 127 (2d Cir. 2008). Here, Crum's reference to Crosby's alleged drug-dealing was brief, limited in scope, and immediately followed by a curative instruction. Moreover, the prosecution's case was substantial and did not rely on any further references to the challenged testimony, including summation.

The Appellate Division's determination that Petitioners' claim was without merit did not constitute an unreasonable application of clearly established federal law as determined by the Supreme Court. Petitioners are not entitled to habeas relief on this ground. See 28 U.S.C. § 2254(d)(1).

## I.    The Apprendi Claim

Petitioners claim that their sentences violated their Sixth Amendment right to a jury trial as set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000), Ring v. Arizona, 536 U.S. 584 (2002), and Blakely v. Washington, 542 U.S. 296 (2004). (Hearns Petition 15; Crosby Petition 15). They argue that their Sixth Amendment rights were violated in two respects: (1) the

sentencing court classified them as "persistent violent felony offenders" under N.Y. Penal Law §
70.08 based on facts not found by a jury and (2) the sentencing court imposed consecutive
sentences under N.Y. Penal Law § 70.25(2) based on facts that were not found by a jury. (See
Crosby Petition 15.) The Appellate Division dismissed Crosby's claim as without merit and
unpreserved for appellate review. Crosby, 33 A.D. 3d 720. It found Hearns's claim to be
without merit. See People v. Hearns, 33 A.D.3d at 722.

The Second Circuit recently concluded that New York's persistent felony offender
statute, N.Y. Penal Law § 70.10, violated the Supreme Court's decision in Blakely. See Besser
v. Walsh, 601 F.3d 163, 170 (2d Cir. 2010). Under § 70.10, if a sentencing court determines that
a defendant has two prior felony convictions, it must conduct a hearing at which it evaluates
whether the history and character of the defendant is such that he should be given an enhanced
sentence. See id.

The trial court did not sentence Petitioners under § 70.10. Instead, it sentenced Crosby
and Hearns as persistent violent felony offenders under § 70.08. Besser did not call § 70.08 into
question. Indeed, although the Besser court noted that § 70.08 was not at issue in the case before
it, the court specifically pointed out that § 70.08 authorizes an enhanced sentence based "solely
upon the court's finding of qualifying predicate convictions." Besser, 601 F.3d at 170 n.4.
Apprendi recognized that a sentencing judge may properly perform that function. See Apprendi,
530 U.S. at 487-90 (citing Almendarez-Torres v. United States, 523 U.S. 224 (1998)); see also
Quan v. Potter, No. 06-CV-4841 (JG), 2007 U.S. Dist. LEXIS 79964, at *20 (E.D.N.Y. Oct. 29,
2007) (concluding that, unlike § 70.10, § 70.08 "does not implicate [a defendant's] Sixth
Amendment right to a jury determination") (internal citations omitted).

Petitioners' claim that their rights were violated by consecutive sentences is also without merit. See Oregon v. Ice, 129 S. Ct. 711 (2009) (Apprendi does not preclude a sentencing judge from finding facts relevant to the determination of whether to impose consecutive rather than concurrent sentences).[3]

The Appellate Division's determination that Petitioners' Apprendi-based claims were without merit did not constitute an unreasonable application of clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). Accordingly, Petitioners are not entitled to habeas relief on these grounds.

**J.      The Allegedly Fraudulent Protective Order**

Hearns claims that the prosecutor did not have a good-faith basis for seeking a protective order. (Hearns Petition 17-18.) According to Hearns, the prosecutor obtained the order for strategic advantage. (Id.) The Appellate Division found that this claim was unpreserved for review. See Hearns, 33 A.D.3d at 722. Accordingly, the court does not reach its merits. See Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999).

**K.      Identification Related Claims**

Petitioners assert that the trial court denied them due process by permitting Deliotte to identify them in court. (Hearns Petition 17.) Hearns also claims that the trial court improperly denied his request to call as a witness a nurse who was present at an earlier identification. (Hearns Petition 17.) Petitioners both contend that there was no independent source for Deliotte's in-court identification. (Hearns Petition 21; Crosby Petition 39-40.) The Appellate

---

[3] Under New York law, a judge cannot impose consecutive sentences for crimes "committed through a single act or omission." See N.Y. Penal Law § 70.25(2). Petitioners appear to assert that the evidence at trial did not show that the burglary and attempted murder involved separate acts. (Crosby Petition 16-17.) Even assuming this raises an issue under Apprendi, the jury itself made the determination that separate acts were involved. See Tr. 1369-70, 1376-78 (setting forth elements of each crime).

Division rejected these claims on the merits. Hearns, 33 A.D.3d at 722; Crosby, 33 A.D.3d at 720-21.

The trial court conducted a Dunaway/Mapp/Wade hearing on September 4, 2003. At the hearing, Hearns's counsel initially expressed her intention to call a nurse who was present during one of Deliotte's pretrial identifications. (Hearing Tr. 108-09.) At the post-hearing argument, Hearns's counsel further explained that she wanted to ask the nurse about the medications that Deliotte had been taking and what, if any, effect that they would have had on his ability to make an identification. (Post-Hearing Argument Tr. 8-9.) Finding that the issue of medication was irrelevant to whether the police's conduct was impermissibly suggestive, the trial court denied defense counsel's application to call the nurse. (Id. at 9.)

The right to compel the attendance of witnesses is essentially a trial right "to present the defendant's version of the facts . . . to the jury so it may decide where the truth lies." Taylor v. Illinois, 484 U.S. 400, 409 (1988). "Generally, the discretionary exclusion of an identifying witness by a trial judge at a pre-trial identification hearing does not rise to the level of constitutional error." Sorenson v. Superintendent, Fishkill Correctional Facility, No. 97-CV-3498 (NG), 1998 U.S. Dist. LEXIS 12124 (E.D.N.Y. Aug. 7, 1998). "[A]bsent some indication that the pre-trial identification procedure employed was suggestive, a hearing judge may properly preclude a defendant from demanding the appearance and testimony of a witness at the Wade hearing." Rivalta v. Artuz, No. 96-CV-8043 (SAS), 1997 U.S. Dist. LEXIS 10282, at *8-10 (S.D.N.Y. July 16, 1997). Here, the trial court concluded that the procedures were not suggestive. (See Decision and Order Dated Nov. 17, 2003.) Its decision not to allow the testimony of the nurse did not violate Hearns's constitutional rights.

Petitioners contend that the trial court erred by not conducting an independent source hearing. They do not, however, challenge the trial court's determination that the identification procedures were not impermissibly suggestive. (See Decision and Order Dated Nov. 17, 2003, 4-5.) Where a trial court properly finds that identification procedures are not impermissibly suggestive, "independent reliability is not a constitutionally required condition of admissibility, and the reliability of the identification is simply a question for the jury." Jarrett v. Headley, 802 F.2d 34, 42 (2d Cir. 1986); see also Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001). Petitioners were not constitutionally entitled to an independent source hearing.

The Appellate Division's determination that Petitioners' identification-based claims were without merit did not constitute an unreasonable application of clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). Accordingly, Petitioners are not entitled to habeas relief on these grounds.

**L.  Eyewitness Expert**

Hearns also contends that the court improperly denied his request to present an expert on the weaknesses of eyewitness identification testimony. (Hearns Petition 20.) The Appellate Division rejected this claim as "without merit." Hearns, 33 A.D.3d at 722.

The Supreme Court has never addressed the issue of whether a defendant has a constitutional right to present expert testimony on the subject of eyewitness identification. Therefore, the Appellate Division cannot have unreasonably applied federal law in rejecting Hearns's claim that the trial court erred in not permitting him to present such testimony. See Musladin, 127 S. Ct. at 653-54; 28 U.S.C. § 2254(d)(1). In any event, however, the trial court did not categorically reject Hearns's application to present expert testimony on this subject; instead, the court precluded such testimony because counsel could not obtain an expert that

would testify for standard rates within a reasonable time. (Tr. of 12/2/03 at 158; Tr. 824-25.) Hearns is not entitled to relief on this ground.

### M.    Prosecutorial Misconduct

Crosby contends that the prosecutor committed misconduct at a hearing held pursuant to People v. Rodriquez, 79 N.Y.2d 445 (1992), and that as a result, he was unable to successfully present a mistaken identification defense. (Crosby Petition 31-37.) The Appellate Division rejected this claim as without merit. Crosby, 33 A.D.3d at 720-21.

Jeffrey Jenkins, one of the prosecution's witnesses, testified at the Rodriquez hearing. He stated that he saw Crosby walking by his house on June 19, 2001, the date that Deliotte was attacked. (Tr. 712-13.) On cross-examination, Crosby's lawyer asked Jenkins whether he had previously told a police detective that he had actually seen Crosby on June 20, 2001. (Tr. 720.) Crosby's lawyer later explained that this line of questioning was based on notes taken by a detective regarding an interview with Jenkins on June 25, 2001. (Tr. 816-19.) Those notes, which the prosecution disclosed, indicated that Jenkins had stated that he saw Crosby on June 20, 2001. (Id.)

Crosby claims, citing the detective's notes and Jenkins's cross-examination, that the prosecutor persuaded Jenkins to testify that he saw Crosby on the 19th rather than the 20th. (Crosby Petition 31-37.) Crosby further claims that, because he had an alibi for the 20th, Jenkins's untruth deprived him of the opportunity to develop his mistaken identification defense. (Id.)

Crosby's claim is without merit. Despite the apparent contradiction in Jenkins's two accounts of the date on which he saw Crosby, there is no evidence of prosecutorial misconduct. In any event, however, Crosby was not prejudiced by anything that occurred during the

20

Rodriquez hearing. Although the prosecution was ultimately not permitted to introduce Jenkins's identification at trial, Crosby could still have questioned Jenkins regarding his memory and introduced alibi evidence. See Fry, 551 U.S. at 121; Brecht, 507 U.S. at 638. The Appellate Division's rejection of Crosby's claim did not constitute an unreasonable application of clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). Accordingly, he is not entitled to habeas relief on this ground.

Hearns also claims that he was deprived of a fair trial as a result of "prosecutorial misconduct" during the cross-examination of defense witness Johnie Butler and during the prosecutor's summation. (Hearns Petition 23.) The Appellate Division found that Hearns's claim was procedurally barred because he did not object at the time of the challenged conduct. See Hearns, 33 A.D.3d at 722. This is an independent and adequate state basis for the decision that prevents this court from reaching the merits of the claim. See Peterson v. Scully, 896 F.2d 661, 663 (2d Cir. 1990); Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994).

### N.    Probable Cause for Arrest of Crosby

Crosby asserts that his arrest was not supported by probable cause. (Crosby Petition 22-29.) The Appellate Division rejected this claim on a state procedural ground: Crosby's failure to move to reopen the probable cause hearing based on testimony presented at trial. Crosby, 33 A.D.3d at 720. The court does not reach the merits of Crosby's claim because this constitutes an independent and adequate basis for the state court's decision. See Coleman, 501 U.S. at 750.

### O.    Ineffective Assistance of Counsel

Finally, Petitioners claim that they were deprived of the effective assistance of counsel at trial. (Crosby Petition 45-46; Hearns Petition 17.) The Appellate Division rejected these claims as "without merit." Crosby, 33 A.D. 3d 720-21; Hearns, 33 A.D.3d at 722.

Petitioners assert that certain trial-court rulings deprived them of "effective assistance of counsel." (See Crosby Petition 45, Hearns Petition 17.) These claims are based not on the performance of their attorneys, but instead on rulings made by the trial court. The merits of the court's determinations are discussed above. Only one of Crosby's claims is, in substance, a true ineffective assistance claim: that his attorney elicited a statement made by Hearns in violation of Bruton v. United States, 391 U.S. 123 (1968). This claim is, however, without merit.

At the beginning of the trial, Crosby's counsel alerted the court that the prosecution intended to elicit testimony from Crum regarding statements made by Hearns that implicated Crosby. (Tr. 5.) The prosecutor promised that Crum would be told not to mention Crosby by name. (Tr. 5-8.) Crum did not mention Crosby on direct examination. (See Tr. 137-154.) On cross-examination, however, Crosby's lawyer elicited testimony from Crum that Hearns had complained about Crosby's failure to assist him with the charged crimes. (Tr. 179-181.)

To prevail on an ineffective assistance claim, a defendant must establish: (1) that defense counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that but for counsel's unprofessional errors, the result of the case would have been different. Strickland v. Washington, 466 U.S. 668, 694 (1984). With respect to the first prong of the Strickland test, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," Strickland, 466 U.S. at 690-91, even where counsel adopts "a course of action (or inaction) that seems risky, unorthodox or downright ill-advised." Tippins v. Walker, 77 F.3d 682, 686 (2d Cir. 1996). "[A] strategic decision is a conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir. 2004).

Crosby's counsel appears to have made the strategic decision to elicit Crum's testimony as evidence that Crosby did not personally commit the crimes against Deliotte. Indeed, in his summation, Crosby's attorney argued that Hearns's statement exculpated Crosby. (Tr. 1257.) Counsel's decision to pursue this defense was not objectively unreasonable under Strickland.

## III. CONCLUSION

The petitions for habeas corpus are denied. A certificate of appealability will not issue because Petitioners have not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Lozada v. United States, 107 F.3d 1011 (2d Cir. 1997). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
June 22, 2010

NICHOLAS G. GARAUFIS
United States District Judge